# UNITED STATES BANKRUPTCY COURT
# FOR THE EASTERN DISTRICT OF VIRGINIA

Alexandria Division

In re:

ISSA AMIREH,

    Debtor.

Case No. 05-12358-RGM
(Chapter 7)

## MEMORANDUM OPINION

This case was before the court on December 11, 2007, on the trustee's objection to the proof of claim filed by Rober and Hiyam Amireh ("Amirehs") and on approval of the trustee's final report,[1] resolution of which turns on the amount and classification of the Amirehs' allowed claim.

## Factual & Procedural Background

Counsel for the Amirehs proffered the following facts at the hearing, which the trustee accepted: In 2001, the debtor and the Amirehs purchased a condominium located at 521 Florida Avenue, #102, Herndon, Virginia (the "Property"). The debtor and the Amirehs each owned a 50% interest in the Property. The instant case began when the debtor filed his chapter 13 petition on June 21, 2005. A proposed chapter 13 plan was denied confirmation on October 11, 2005, and the debtor did not subsequently file an amended plan. After his plan was denied confirmation, the debtor voluntarily converted this case to a chapter 7 proceeding on November 15, 2005.

Chase Home Finance, LLC, the holder of a deed of trust against the Property, obtained relief from the automatic stay by order dated September 19, 2005. Chase scheduled a foreclosure sale of the Property for November 10, 2005. The Amirehs believed that the case had been dismissed at the

---

[1] Unless otherwise indicated, all references to the trustee are to the chapter 7 trustee, Richard A. Bartl.

1

time and, in order to prevent the foreclosure, purchased the debtor's interest in the Property. The debtor gave the Amirehs a quitclaim deed dated November 4, 2005, in exchange for payments toward certain liens against the Property: $13,655.98 to Chase; $15,000 to Cheri A. Small, the holder of a judgment against the debtor and a judgment lien against the Property; and $6,500 to the debtor.

When a debtor's chapter 13 plan is denied confirmation, the clerk will dismiss the case unless a new plan is filed or another action is taken. However, if the debtor has previously filed a case, the clerk will issue a show cause order which was done here. Because the case was not dismissed, the debtor's interest in the Property remained property of the estate. The trustee filed an adversary proceeding against the Amirehs to avoid the transfer as an unauthorized postpetition transfer under Bankruptcy Code §549(c). By agreement of the parties, the court entered a consent order avoiding the transfer to the Amirehs. The trustee did not repay the sum extended by the Amirehs in purchasing the debtor's interest in the Property.

The debtor continued to reside in the Property, and the court ordered him to pay rent to the trustee commencing May 1, 2006. The debtor did not make any rental payments, and the trustee did not pay the mortgage. As a result, Chase scheduled and completed a foreclosure sale of the Property on July 5, 2006. After payment of all the outstanding liens against the Property, Stephen Wood, the substitute trustee under Chase's deed of trust, held a surplus of approximately $12,000 to $13,000. The trustee and the Amirehs claimed competing interests in the surplus. Chase filed an interpleader in Fairfax County Circuit Court and deposited the funds into the circuit court's registry. In response, the trustee filed an adversary proceeding against Wood and the Amirehs seeking turnover of the surplus proceeds as property of the estate. An amended complaint was filed, which removed the

Amirehs as defendants. The trustee and Wood endorsed a consent order, which the court entered, providing for turnover of the surplus proceeds to the trustee as property of the estate but "subject to a potential secured claim by defendants Rober and Hiyam Amireh." Surplus proceeds in the amount of $11,794.79 were turned over the trustee. They constitute the remaining asset of the estate.

In addition to these uncontested facts, the court makes the following findings of fact: Prior to the current case, the debtor filed a chapter 13 case, Case No. 05-10891-RGM, on March 15, 2005. This earlier case was dismissed on May 10, 2005, for failure to make plan payments.

In this case, the Amirehs timely filed a proof of claim in the aggregate amount of $45,968.98 plus an unliquidated claim for rent of $943 per month. $39,468.98 of this claim and the monthly rent of $943 are asserted to be secured, and $6,500 is asserted as an unsecured non-priority claim. The liquidated secured portion of the claim is composed of the following components: (1) $13,655.98 that Rober Amireh paid to Chase to prevent the first scheduled foreclosure; (2) $15,000 that Rober Amireh paid to release Small's judgment lien; and (3) $10,813 plus interest for a judgment held by Rober Amireh against the debtor. The unliquidated secured amount for rent constitutes amounts the Amirehs believe they are owed from November 2005, the month the debtor converted this case, to settlement of the Property for "rent." The Amirehs provide no documentary evidence or explanation of the basis for the $6,500 unsecured non-priority claim. The trustee has filed an objection to the entire claim. The trustee's final report provides for a distribution on only the unsecured non-priority portion of the claim. The Amirehs object to the treatment of their filed claim in the final report.

## Discussion

The final report turns on whether the Amirehs have an allowed claim and the amount of any such claim so the court will first address the trustee's objection to claim.

### A. *Unliquidated Claim for Rent*

The Amirehs' proof of claim includes an unliquidated claim for post-conversion rent in the amount of $943 per month. A review of the exhibit to their proof of claim shows that the Amirehs arrived at this amount by determining the "mortgage, condo fees, which [the debtor] should be paying." The trustee objects on the grounds that there is no basis for a post-conversion rent claim.

At the time the case was filed, the debtor's interest in the Property became property of the estate under Bankruptcy Code §541(a)(1). When the debtor converted to a chapter 7 case, all property in the debtor's possession or under his control became property of the chapter 7 estate to be administered by the trustee. *See* Bankruptcy Code §348(f)(1). Therefore, as of the conversion date, the trustee and the Amirehs jointly owned the Property. Virginia law requires a co-tenant receiving more than his proportionate share of rent or income to account to the other co-tenants. *See* Va. Code §8.01-31 (1950) (cause of action for accounting in equity); *Paxton v. Gamewell*, 82 Va. 706, 1 S.E. 92 (1887). A rent claim, however, is contingent on the trustee having actually received rental income from the debtor. *See Eggleston v. Crump*, 150 Va. 414, 420, 143 S.E. 688, 689 (1928). At the hearing on the objection to claim, the Amirehs conceded that the debtor had paid no rent. As there is no rental income for which the trustee must account, the court will sustain the trustee's objection to the Amirehs' unliquidated claim for post-conversion rent.

### B. *Secured Claim for Rober Amireh's Judgment of $10,813*

A portion of the Amirehs' secured claim includes a claim for $10,813 plus interest on account of a judgment held by Rober Amireh against the debtor. The interpleader complaint filed after Chase foreclosed on the Property shows that this judgment was paid in full from the debtor's share of the surplus. In their response to the trustee's objection to claim, the Amirehs confirm this fact. *See* Resp. of Rober and Hiyam Amireh to Trustee's Obj. to Claim at 7. As the Amirehs concede that this portion of the claim has been satisfied, the trustee's objection will be sustained.

### C. *Unsecured Claim for $6,500*

The Amirehs' proof of claim includes an unsecured non-priority claim for $6,500 to which the trustee objects on the grounds that no explanation or documentary evidence is provided. In their response, the Amirehs explain that the claim is for the $6,500 advanced to the debtor pre-conversion as a part of the avoided purchase of the Property. Additionally, the Amirehs claim that while they filed the claim as an unsecured non-priority claim, the claim should be treated as secured under Bankruptcy Code §549(c) or as an administrative expense under §503(b)(1)(A).

The Amirehs assert that their payment of $6,500 to the debtor should be allowed as an administrative expense under Bankruptcy Code §503(b)(1)(A) as a part of the "actual, necessary costs and expenses of preserving the estate." In support of this position, they assert that the estate was preserved because the payment prevented a foreclosure. Under controlling Fourth Circuit precedent, a §503(b)(1)(A) claim must arise from a postpetition transaction between the creditor and the debtor-in-possession or trustee. *See Devan v. Simon DeBartolo Group, L.P. (In re Merry-Go-Round Enters., Inc.)*, 180 F.3d 149, 157 (4th Cir. 1999). This rule exists because the Bankruptcy Code makes the trustee the party responsible for administering and preserving the estate, *see In re*

5

*Kids Creek Partners, L.P.*, 248 B.R. 554, 560 (Bankr.N.D.Ill. 2000), and Congress recognized administrative expenses as an inducement for parties to deal with the trustee. *See Merry-Go-Round Enters.*, 180 F.3d at 158; *Amalgamated Ins. Fund v. McFarlin's, Inc.*, 789 F.2d 98, 101 (2d Cir. 1986). In this case, the $6,500 transaction involved a postpetition transaction between the Amirehs and the debtor, not the chapter 13 trustee. On this basis alone, the court must deny the Amirehs an administrative expense. *See, e.g.*, *Ruck v. Tavenner (In re Smoot)*, 2006 WL 848120, *4 (E.D.Va. Mar. 30, 2006) (disallowing a request for an administrative expense because costs sought were associated with transactions not involving the trustee), *appeal dismissed*, 194 Fed.Appx. 96 (4th Cir. 2006). Additionally, the court is not convinced that a payment of $6,500 to the debtor conferred any benefit upon the estate. Even if the court were to accept that preventing a foreclosure of the Property preserved the estate in some manner, it is not at all clear how paying the *debtor*, who had no authority to foreclose on the Property, prevented a foreclosure. Thus, the court rejects the Amirehs' request to treat the $6,500 as an administrative expense under §503(b)(1)(A).

Alternatively, the Amirehs allege that they are entitled to a secured claim by way of an equitable lien under §549(c).[2] They concede that they do not qualify under the literal language of §549(c) because they knew of the commencement of this case. Their argument is that §549(c) should apply in principle because they did not ***know*** that the case was ***pending*** at the time they advanced the funds to the debtor as partial payment for the Property. They base this position on the assertion that the clerk of the court failed to dismiss this case as they understood the court's order

---

[2] The pertinent language of §549(c) provides: "A good faith purchaser without knowledge of the commencement of the case and for less than present fair equivalent value has a lien on the property transferred to the extent of any present value given, unless a copy or notice of the petition was so filed before such transfer was so perfected." Bankruptcy Code §549(c).

denying confirmation of the chapter 13 plan to require. Had the case been dismissed, they argue, property of the estate would have revested in the debtor and no §549 violation would have arisen.

As the Amirehs must concede, the statutes applies only where a transferee lacks knowledge of the ***commencement*** of the case. The Amirehs actively participated in this case and knew of its commencement. The court will not expand the reach of the statute beyond the language chosen by Congress. *See United States v. Ron Pair Enters., Inc.*, 489 U.S. 235, 242 (1989) (in interpreting the Bankruptcy Code, "[t]he plain meaning of legislation should be conclusive").

Even if they were correct in asserting that the clerk failed to properly dismiss this case, the equities do not favor the Amirehs. Throughout these proceedings, the Amirehs have been represented by counsel. Counsel could have, with minimal effort, confirmed that the case remained pending at the time of the Amirehs' purchase of the Property by checking the docket. More importantly, however, the clerk was correct in not dismissing the case after denial of confirmation. The order denying confirmation of the debtor's chapter 13 plan required the clerk to dismiss the case within twenty days from the date of the order unless the debtor took one of the actions set forth in Local Bankruptcy Rule 3015-2. Of particular relevance is LBR 3015-2(C)(2),[3] which sets forth the

---

[3] The Local Bankruptcy Rules have been amended since October 11, 2005. All references to the Local Rules are to those in effect on October 11, 2005. At that time, Local Bankruptcy Rule 3015-2(C)(2) provided as follows:

> ***Dismissal of Case upon Denial of Confirmation.*** Except as provided in LBR 1017-3, if the Court denies confirmation of the debtor's original or subsequently modified Chapter 13 Plan and Related Motions, unless the Court has entered an order previously confirming a plan, the Clerk is directed to issue an order dismissing the chapter 13 case unless, within twenty (20) days after denial of confirmation:
> (a) the debtor files a new Modified Chapter 13 Plan and Related Motions;
> (b) the debtor converts or moves to convert the case to another chapter of the Bankruptcy Code;
> (c) the debtor files a motion for reconsideration or appeals the denial of confirmation; or
> (d) the Court otherwise orders.
> An order previously entered by the Court confirming a Chapter 13 Plan shall remain in full force and effect if a subsequently modified Chapter 13 Plan and Related Motions is denied confirmation by the Court.

7

possible action the debtor must take in order to avoid automatic dismissal. The first sentence of this rule explicitly states that dismissal will occur "[e]xcept as provided in LBR 1017-3." LBR 1017-3[4] suspends the automatic dismissal of a case and requires the clerk to issue a rule to show cause if the debtor had another case pending at any time within 12 months preceding the filing of the present case. The debtor's previous case, which was disclosed in his chapter 13 petition, was dismissed on May 10, 2005, so LBR 1017-3 applied. Contrary to the Amirehs' argument, the clerk properly issued a notice to show cause instead of an automatic dismissal. The Amirehs not only had knowledge of the commencement of the case, but should have known that it was not going to be automatically dismissed. The court will deny their request for a lien under §549(c).

The court does, however, agree that an unsecured non-priority claim is appropriate. The relevant facts establish that the Amirehs paid the debtor $6,500 as part of the consideration for the purchase of the Property. The payment was made on or about November 4, 2005, which falls between the commencement of the chapter 13 case and the conversion to chapter 7. Because the trustee avoided the transfer of the Property, the Amirehs are entitled to recover the funds paid to the debtor. As the money was paid postpetition and pre-conversion, Bankruptcy Code §348(d) governs:

> A claim against the estate or the debtor that arises after the order for relief but before conversion in a case that is converted under section . . . 1307 of this title . . . shall be treated for all purposes as if such claim had arisen immediately before the date of the filing of the petition.

---

[4] Local Bankruptcy Rule 1017-3 in effect on October 11, 2005 provided as follows:

***Rule to Show Cause in Lieu of Dismissal in Certain Cases***: Notwithstanding the provisions of LBR 1006-1, 1007-1(A), 1007-3-(C), 2003-1(B), 3015-1(G), 3015-2(C) and 3070-1(C), the Clerk shall not enter an order dismissing the debtor's case if the case was previously converted from any other chapter of title 11 or if the debtor was a debtor in another case pending at any time within 12 months preceding the filing of the present case. In such a case, the Clerk shall, in lieu of dismissal, issue a rule to show cause to the debtor and set the rule for a hearing.

The Amirehs are treated by §348(d) as if they advanced the funds to the debtor immediately prior to the filing of the petition. Therefore, they are allowed an unsecured non-priority claim in the amount of $6,500, and the trustee's objection to this portion of the claim will be overruled.

### D. *Remaining Secured Portion of Claim*

The remaining two elements of the Amirehs' claim both relate to monies paid by the Amirehs to third parties on the debtor's behalf as a part of the purchase price of the Property. The first is their claim for $13,655.98, which is the amount that the Amirehs paid to Chase, the holder of a mortgage on the Property, and is classified as secured. The second portion is their claim for $15,000, which is the amount the Amirehs paid to Small, a creditor holding a judgment lien against the Property. Because the trustee successfully avoided the transfer of the Property, the Amirehs now seek repayment from the bankruptcy estate. They offer multiple alternative theories in support of their claim: secured status through a §549(c) equitable lien; secured status by subrogation under §509; payment as an administrative expense; or as an unsecured non-priority claim. The trustee objects to these claims on the grounds that the Amirehs have no basis to make a claim against the estate based on their payment of these judgments and that any claim to which the Amirehs are entitled should not be classified as secured.

Beginning first with the request for administrative expense priority for these portions of the claim, the Amirehs claim that they are entitled to a §503(b)(1)(A) expense because their payments to Chase and Small were the "actual, necessary costs and expenses of preserving the estate." The Amirehs contend that by paying these amounts off in the purchase of the Property, they prevented Chase from foreclosing on the Property and thereby preserved the estate. As indicated in Part C,

*supra*, a requirement for a §503(b)(1)(A) claim is a postpetition transaction with the trustee. Here, the Amirehs paid two creditors on the debtor's behalf. These payments did not involve the trustee. The law of this circuit does not permit an administrative expense under these circumstances. *See Merry-Go-Round Enters.*, 180 F.3d at 157; *see also Smoot*, 2006 WL 848120 at *4.

Furthermore, the court is not convinced that the Amirehs conferred a benefit upon the estate as required by *CIT Communications Finance Corp. v. Midway Airlines Corp. (In re Midway Airlines Corp.)*, 406 F.3d 229, 237 (4th Cir. 2005). The case on which the Amirehs rely, *In re Tropea*, 352 B.R. 766 (Bankr.N.D.W.Va. 2006), is distinguishable. While the court in *Tropea* did approve an administrative expense for a third party's efforts in preventing a foreclosure of estate property, the party's conduct in that case directly benefitted the estate by preventing a foreclosure that caused the estate to realize an additional $30,000 in a subsequent sale of the assets. Here, the Amirehs may have prevented a foreclosure by paying these amounts, but the benefit to the estate is speculative. *See Ford Motor Credit Co. v. Dobbins*, 35 F.3d 860, 866 (4th Cir. 1994) (court's analysis should focus on whether the estate received an actual benefit, rather than a potential or speculative benefit); *see also In re Allen Care Ctrs., Inc.*, 163 B.R. 180, 188 (Bankr.D.Or. 1994). The court will deny the Amirehs' request to treat these payments as an administrative expense under §503(b)(1)(A).

Turning next to the demand for a secured claim on account of an equitable lien under §549(c), the court reaches the same conclusion as it did in Part C, *supra*. The plain language of §549(c) does not apply to the Amirehs, and the court will not extend the statute for their benefit, especially in this case where the equities do not favor the Amirehs. The court will deny the Amirehs' a secured claim based on an equitable lien theory.

Case 05-12358-RGM   Doc 145   Filed 01/02/08   Entered 01/02/08 16:19:13   Desc Main
                          Document      Page 11 of 14

Finally, the Amirehs assert that they are subrogated under Bankruptcy Code §509(a) to the rights of the creditors they paid. With respect to the Amirehs' payment of $15,000 to Small, the court concludes that the subrogation statute does not apply. The debtor's schedules show that Small obtained a $15,000 judgment against the debtor individually. Likewise, the foreclosing agent's interpleader complaint also shows the judgment to be against the debtor individually. As a judgment against the debtor individually, to the extent Small held a judgment lien against the Property, this lien attached only to the debtor's 50% interest in the Property. The Bankruptcy Code provides two means by which the Amirehs could be subrogated to Small's rights: The Amirehs must have been "liable with the debtor on, or [have] secured, a claim of a creditor against the debtor." Bankruptcy Code §509(a)(1). The Small judgment was against the debtor individually so the Amirehs were not codebtors with respect to that obligation. While the Amirehs would be entitled to subrogation if they had "granted a security in [their] own property as collateral to secure repayment by the debtor," 4 *Collier on Bankruptcy* ¶509.02[2] (Alan N. Resnick & Henry J. Sommer eds., 15th ed. rev. 2007), Small's judgment lien only attached to the debtor's interest in the Property and not to the Amirehs' interest. Thus, subrogation is not available under the second ground. *Cf. In re Valley Vue Joint Venture*, 123 B.R. 199, 204 n.10 (Bankr.E.D.Va. 1991). Subrogation under §509(a) does not apply to the Amirehs' payment of the Small judgment.

The analysis is different, however, for the Amirehs' payment of $13,655.98 to Chase. Section 509(b)(2), which provides that an "entity is not subrogated to the rights of such creditor to the extent that as between the debtor and such entity, such entity received the consideration for the claim held by such creditor," precludes subrogation under these facts. This exception exists to prevent a co-debtor who received consideration for the underlying claim from paying the

creditor—to whom it was ultimately liable—and then recovering against another co-debtor by way of subrogation. *See* 4 *Collier on Bankruptcy* ¶509.03[5].

The debtor was liable to Chase under a note dated October 5, 2001 in the principal amount of $85,000, which was secured by a deed of trust on the Property. Rober Amireh executed the note as a comaker, and the note makes each borrower jointly and severally liable to repay. The note was provided in exchange for a loan that the debtor and the Amirehs used to purchase the Property. Thus, Rober Amireh and the debtor both received the consideration (i.e., the $85,000 loan) that is the basis for Chase's claim against the debtor. When the Amirehs paid the $13,655.98 to Chase, they were paying an obligation on which Rober Amireh was ultimately liable as a codebtor. Courts have applied §509(b)(2) under these circumstances to prevent the paying codebtor, who is ultimately liable on the obligation paid, from becoming subrogated to the creditor's rights against the remaining codebtor. *See, e.g.*, *Fibreboard Corp. v. Celotex Corp. (In re Celotex Corp.)*, 472 F.3d 1318, 1321 (11th Cir. 2006) ("Every court that has expressly applied §509(b)(2) has held it excludes those who are primarily liable for the debt from subrogation because they received consideration for paying the debt."); *Valley Vue Joint Venture*, 123 B.R. at 205. Here, the court must apply the exception in §509(b)(2) to deny the Amirehs' request for subrogation.[5]

The appropriate treatment of the payments to Small and Chase is to allow them as an unsecured non-priority claim under §348(d). The Amirehs paid both on the debtor's behalf after the commencement of the case but prior to the chapter 7 conversion. The Bankruptcy Code treats this

---

[5]There is no evidence that either the debtor or the Amirehs paid more than their share of the mortgage and, therefore, that one is entitled to reimbursement from the other. Except for the one payment of $13,655.98, the record is silent as to who made what other payments.

payment as if it were made immediately prior to filing of the petition, thus providing the Amirehs an unsecured non-priority claim in the amount of $28,655.98.

## **Conclusion**

The court will sustain the trustee's objection to (1) the Amirehs' unliquidated claim for post-conversion rent; and (2) the classification of the $15,000 and $13,655.98 payments to Small and Chase, respectively, as a secured claim. The court will overrule the trustee's objection to (1) the unsecured non-priority claim of $6,500; (2) allowance of the $15,000 claim relating to payment of the Small judgment as an unsecured non-priority claim; and (3) allowance of the $13,655.98 claim relating to the payment to Chase as an unsecured non-priority claim. The trustee's objection to the secured claim for $10,813 relating to Rober Amireh's judgment is sustained. The Amirehs are allowed an unsecured non-priority claim of $35,155.98. The trustee's final report is amended accordingly.

    Alexandria, Virginia
    January 2, 2008

                                        /s/ Robert G. Mayer
                                        Robert G. Mayer
                                        United States Bankruptcy Judge

Copy electronically to:

Gregory H. Counts
Daniel M. Press
Jack Frankel

Copy mailed to:

Issa Amireh
521 Florida Avenue, #102
Herndon, Virginia 20170

13916